UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEEHAN GENETICS, LLC; and BENKIRK, INC. D/B/A WILLIAMS NURSERY, | No. 2:14-CV-02227-KJM-DAD |
| Plaintiffs, | ORDER |
| v. | |
| JAKOV P. DULCICH AND SONS, LLC; JAKOV P. DULCICH; NICK P. DULCICH; and PETER DULCICH, | |
| Defendants. | |

This matter is before the court on defendants' motion to stay this case. (ECF No. 30.) Plaintiffs oppose the motion. (ECF No. 31.) The court submitted the matter without a hearing. As explained below, the court GRANTS defendants' motion.

I.  FACTUAL ALLEGATIONS

Plaintiff Sheehan Genetics, LLC (Sheehan) is a Fresno company that was formed in 2006 "to further test and commercially develop the table grape varieties bred by Timothy Sheehan." (Pls.' First Am. Compl. ¶ 1, ECF No. 8.) Plaintiff Benkirk, Inc. (Benkirk) is a nursery "that has been growing vines in the Central Valley since the early 1970's." (*Id.* ¶ 2.) Benkirk "is the exclusive agent to license Sheehan varieties to growers in the United States and Mexico." (*Id.*) Defendants all are California residents. (*Id.* ¶¶ 3–6.)

1

1   Timothy Sheehan was a breeder of grapes from 1980 to 2009, and was the founder of Sheehan Genetics. (*Id.* ¶¶ 1, 13.) In 2001, Benkirk became the exclusive agent to license the varieties Sheehan bred and developed to all growers in the U.S. and Mexico. (*Id.* ¶ 16.) In 2004, defendant Dulcich and Sons received variety 10-418 from Sheehan "for testing and evaluation on Dulcich test blocks." (*Id.* ¶ 18.) In February 2012, "Dulcich filed a provisional patent application, 61/593,400 (the '400 provisional application) claiming a variety allegedly derived from 10-418, titled 'Improved *Vitis Vinifera* variety,' naming Jakov P. Dulcich, Nick P. Dulcich, and Peter Dulcich as inventors." (*Id.* ¶ 20.) In August 2012, "Dulcich filed a US plant application, application number 13/573,085 (the '085 application), claiming priority to the '400 provisional application and naming Jakov P. Dulcich, Nick P. Dulcich, and Peter Dulcich as inventors." (*Id.*) A later patent, "[t]he '316 patent, titled 'Grape Vine Plant Denominated 'JPD-001', issued from the '085 application." (*Id.*) Dulcich did not inform plaintiffs of the application filings, and plaintiffs did not know the patent applications were filed. (*Id.*)

The complaint further alleges that in August 2013,

> the [Dulcich] '085 application was published by the United States Patent and Trademark Office as U.S. Patent Publication No. 2013/0198918. The publication contains details of Sheehan's confidential and proprietary variety 10-418 grapevine plant that Dulcich learned from Sheehan when Sheehan entrusted Dulcich with several vines of variety 10-418. Dulcich did not inform Plaintiffs that the '085 application was published and Plaintiffs were not otherwise informed that this had occurred.

(*Id.* ¶ 21.)

The Dulcich '316 patent states, in pertinent part:

> In the spring of 2002, Sheehan-Genetics 10-418 was grafted onto 2-A Thompson Seedless in a variety plot owned by Jakov P. Dulcich and Sons, near McFarland . . . . The plant that resulted from the grafting was grown from 2002 until 2006, at which time asexual one-bud cuttings of plants resulting from the Sheehan-Genetic 10-418/2-A Thompson Seedless graft were selected from the vineyard and grafted upon a variety known as Crimson at another Jakov P Dulcich and Sons varietal plot near Delano . . . . In January, 2010, select samples from this plot exhibited characteristics desired for what would become JPD-001 . . . .

(*Id.* ¶ 22.) Plaintiffs claim "the variety described and patented in the '316 patent is Sheehan

2

variety 10-418." (*Id.* ¶ 23.) Plaintiffs also assert, "Growers from all around the world license variety 10-418, known as 'Great Green,' from Sheehan and Williams Nursery." (*Id.* ¶ 24.)

        To illustrate the existence of a current controversy, plaintiffs allege as follows: On September 25, 2013, Benkirk, as the exclusive agent of Sheehan, granted Jasmine Vineyards (Jasmine) a commercial license to grow and sell Sheehan variety 10-418, known as "Great Green." (*Id.* ¶ 25.) Under that agreement, Benkirk provided Jasmine with plants of variety 10-418 for Jasmine to grow and sell as "Great Green." (*Id.* ¶ 26.) In July 2014, Jasmine planted variety 10-418 in the ground. (*Id.*) In the same month, Nick Dulcich, one of the named inventors of the patent-in-suit, the '316 patent, and co-owner and president of Dulcich, approached Jasmine claiming Jasmine could not grow "Great Green." (*Id.* ¶ 27.) Nick Dulcich asserted to Jasmine's owner that "Great Green" infringed the '316 patent. When Jasmine's owner asked whether Nick Dulcich was accusing Jasmine of infringing the '316 patent, Dulcich said yes. (*Id.* ¶ 28.) Subsequently, Jasmine contacted Benkirk regarding the infringement allegations (*id.* ¶ 29), and Benkirk then immediately contacted Sheehan. (*Id.* ¶ 30). Accordingly, plaintiffs allege, "there is a substantial and justiciable controversy" between the parties as to the "naming of the correct inventor and owner of this patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (*Id.* ¶ 32.)

        Plaintiffs seek correction of inventorship of the '316 patent, among other things. (*Id.* ¶ 43.)

II.    PROCEDURAL BACKGROUND

        Plaintiffs commenced this action in this court on September 25, 2014. (ECF No. 1.) The operative complaint, plaintiffs' first amended complaint, alleges six claims: (1) declaration concerning invalidity of the '316 Patent; (2) correction of inventorship of the '316 Patent; (3) declaration of ownership of the '316 Patent; (4) trade secret misappropriation; (5) unfair competition; and (6) conversion. (*See* ECF No. 8.) Based on the parties' February 19, 2015 stipulation (ECF No. 22), the court dismissed claim one on February 24, 2015 (ECF No. 23). On March 17, 2015, plaintiff Sheehan filed a request for declaration of interference in the United States Patent and Trademark Office (USPTO). The authority to suggest an

interference derives from Title 37 of the Code of Federal Regulations.  Specifically, section 41.202 provides that an applicant "may suggest an interference with another application or a patent." 37 C.F.R § 41.202(a).  In common parlance, an interference proceeding's purpose is to determine which applicant is entitled to the patent at issue.  *See Boyce v. Anderson*, 451 F.2d 818, 819 (9th Cir. 1971); *Incyte Pharm., Inc. v. Affymetrix, Inc.*, 131 F. Supp. 2d 1154, 1156 (N.D. Cal. 2000) ("An interference is a proceeding in which the Board determines which of two or more different parties was the first inventor of the claimed invention.").  Sheehan's request asserts that claim 1 of the '316 patent on JPD-001 (the Green Emerald) interferes with Sheehan's patent application for Sheegene-17 (the Great Green).  (ECF No. 30-2.)   Plaintiffs filed their application in April 2012 and claimed priority over defendants' application filed in February 2012 because they argued "the claimed variety . . . existed prior to February 1, 2012." (*Id.* at 4–6.)  The USPTO issued a declaration of interference on April 24, 2015, bringing the matter before the Patent Trial and Appeal Board (PTAB).  (ECF No. 30-3.)  *See* 37 C.F.R. § 41.203(a) (administrative patent judge declares an interference exists "if the subject matter of a claim of one party would, if prior art, have anticipated or rendered obvious the subject matter of a claim of the opposing party and vice versa").  In its declaration, the USPTO noted that a "typical motion period lasts approximately eight (8) months."  (ECF No. 30-3 at 3.)

Defendants request that the court take judicial notice of three documents attached as exhibits to the declaration of Christopher E. Dominguez: (1) Sheehan's request for declaration of interference; (2) the USPTO's declaration of interference; and (3) the March 8, 2011 standing order of the USPTO before the Board of Patent Appeals and Interferences.  (ECF No. 30, Exs. A-C.)  Plaintiffs do not oppose.  The court GRANTS defendants' request.  *See Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014) (taking judicial notice under similar circumstances).

On May 29, 2015, defendants filed their motion to stay this case pending final resolution of the declaration of interference proceedings before PTAB related to the '316 Patent. (ECF No. 30.)  As noted, plaintiffs opposed.  (ECF No. 31.)  Defendants have replied (ECF No. 33).

4

III.     DISCUSSION

Defendants argue that "[b]ecause the interference action and the correction of inventorship claims are virtually identical on the facts and the practical outcomes, the Court should stay this action in the interest of judicial economy, efficiency and mitigation of costs for the parties, and to avoid potentially inconsistent determinations between the Court and the USPTO." (ECF No. 30 at 2.) Plaintiffs counter, "all of the[] [relevant] factors, and the totality of the circumstances, weigh against staying the pending litigation in this Court." (ECF No. 31 at 6.)

The parties do not dispute this court's inherent authority to stay proceedings before it. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). In ruling on a motion to stay, district courts must "exercise [their] judgment, which must weigh competing interests and maintain an even balance." *Id.* at 255–56. The same general principles apply in a patent case: "a stay of proceedings in the district court pending the outcome of the parallel proceedings in the PTO remains an option within the district court's discretion." *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 936 (Fed. Cir. 2003). In determining whether to stay a case, the parties agree a court may consider the following three factors: (1) "whether discovery is complete and whether a trial date has been set"; (2) "whether a stay will simplify the issues in question and trial of the case"; and (3) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party[.]" *See, e.g., In re Cygnus Telecommunications Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). Here, on balance, these factors weigh in favor of a stay.

A.     Status of Discovery and Trial

Here, the court issued a scheduling order on February 12, 2015. (ECF No. 19.) All discovery was to have been completed by August 7, 2015. (*Id.* at 2.) A jury trial is set on April 11, 2016. (*Id.* at 8.) As of the date of this order, the parties have not moved to modify those dates. On the other hand, the parties have not engaged in further motion practice or expended resources in litigating the matter or preparing for trial. This factor is neutral. *Cf.*

5

*Enlink Geoenergy Servs., Inc. v. Jackson & Sons Drilling & Pump, Inc.*, No. 09-03524, 2009 WL 3353317, at *2 (N.D. Cal. Oct. 16, 2009) ("Discovery in this case is still in its early stages and no trial date has been set.  [The plaintiff] filed its complaint less than two months ago and nothing else substantive has happened in the case.  The parties have not exchanged preliminary disclosures, begun discovery or filed any other motions.  Thus, this factor weighs in favor of a stay.").

B. Simplification of Issues

Here, PTAB's resolution of the matter before it, while not dispositive of this court's decision, is likely to "aid the district court in subsequent proceedings": both proceedings involve the inventorship determination.  *Medichem, S.A.*, 353 F.3d at 936.  This is true "in light of [PTAB's] expertise in the matter . . . ."  *Id.*  Furthermore, PTAB's priority determination may eliminate "the need for further proceedings in the district court altogether" because with the stipulated dismissal of plaintiffs' first claim, their second claim—inventorship of the '316 Patent—is the only claim serving as a basis for this court's jurisdiction over the entire case.  The second factor weighs in favor of a stay.

C. Prejudice and Tactical Disadvantage to Plaintiffs

Here, the parties agree that the interference proceedings will likely be resolved by the first part of 2016.  (ECF No. 30 at 3–4; ECF No. 31 at 11.)  The parties' estimation is consistent with the PTAB's declaration and the applicable regulation.  *See* ECF No. 30-3 at 3; 37 C.F.R. § 41.200(c) ("Patent interferences shall be administered such that pendency before the Board is normally no more than two years.").  As noted above, the trial before this court currently is set for April 11, 2016.  "[A] stay will further the interests of judicial economy and the conservation of the parties' resources," avoiding parallel proceedings.  *Wireless Spectrum Technologies, Inc. v. Motorola Corp.*, No. 00-0905, 2001 WL 32852, at *2 (N.D. Ill. Jan. 12, 2001).  "[T]here is no need for either party to spend time and money litigating both here and in front of the PTO at the same time."  *Id.*

Furthermore, defendants' motion to stay does not present, and plaintiffs do not identify, any tactical disadvantage to plaintiffs, as plaintiffs themselves initiated the interference

6

proceeding. Plaintiffs have not moved for injunctive relief, nor have they indicated an intent to do so. *See Thermogenesis Corp. v. Origen Biomedical, Inc.*, No. 13-02619, 2015 WL 1291390, at *3 (E.D. Cal. Mar. 20, 2015) ("Even if the Court did not stay this case, Defendant would not be enjoined from continuing to conduct business during litigation, as the Court has already denied Plaintiff's Motion for a Preliminary Injunction."). This third factor does not weigh against a stay.

IV.     CONCLUSION

The balance of the relevant factors, as described above, weighs in favor of a stay. Defendants' motion is GRANTED and this action is STAYED pending the PTAB's decision. All dates and hearings currently set in this case are therefore VACATED. The parties are directed to file a joint report every 60 days apprising the court of the status of the PTAB interference proceeding, while that proceeding is pending. The parties are also directed to file a joint report within seven (7) days of the PTAB's decision, advising the court of the decision and the parties' proposal for rescheduling the balance of this case. This order resolves ECF No. 30.

IT IS SO ORDERED.

DATED: September 2, 2015.

_____
UNITED STATES DISTRICT JUDGE